**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

CHANTELL SACKETT; MICHAEL
SACKETT,
        *Plaintiffs-Appellants,*

        v.

UNITED STATES ENVIRONMENTAL
PROTECTION AGENCY; STEVEN L.
JOHNSON, Administrator,
        *Defendants-Appellees.*

No. 08-35854

D.C. No.
2:08-cv-00185-EJL

OPINION

Appeal from the United States District Court
for the District of Idaho
Edward J. Lodge, District Judge, Presiding

Argued and Submitted
December 9, 2009
Submission Withdrawn December 23, 2009
Resubmitted August 18, 2010
Seattle, Washington

Filed September 17, 2010

Before: Robert R. Beezer, Ronald M. Gould and
Richard C. Tallman, Circuit Judges.

Opinion by Judge Gould

14335

**COUNSEL**

Leslie R. Weatherhead, Witherspoon Kelley Davenport & Toole, Spokane, Washington; M. Reed Hopper, Damien M. Schiff (argued), Pacific Legal Foundation, Sacramento, California, for the plaintiffs-appellants.

Ankur K. Tohan, United States Environmental Protection Agency, Seattle, Washington; Ronald J. Tenpas, Assistant Attorney General; Cynthia J. Morris, Aaron P. Avila, Jennifer Scheller Neumann (argued), United States Department of Justice Environment and Natural Resources Division, Washington, DC, for the defendants-appellees.

**OPINION**

GOULD, Circuit Judge:

We determine whether federal courts have subject-matter jurisdiction to conduct review of administrative compliance

orders issued by the Environmental Protection Agency pursuant to the Clean Water Act, 33 U.S.C. § 1319(a)(3), before the EPA has filed a lawsuit in federal court to enforce the compliance order. We join our sister circuits and hold that the Clean Water Act precludes pre-enforcement judicial review of administrative compliance orders, and that such preclusion does not violate due process.

**I**

Chantell and Michael Sackett ("the Sacketts") own a 0.63-acre undeveloped lot in Idaho near Priest Lake ("the Parcel"). In April and May of 2007, the Sacketts filled in about one-half acre of that property with dirt and rock in preparation for building a house.

On November 26, 2007, the EPA issued a compliance order against the Sacketts. The compliance order alleged that the Parcel is a wetland subject to the Clean Water Act ("CWA") and that the Sacketts violated the CWA by filling in their property without first obtaining a permit.[1] The compliance order required the Sacketts to remove the fill material and restore the Parcel to its original condition. The compliance order states that "[v]iolation of, or failure to comply with, the foregoing Order may subject Respondents to (1) civil penalties of up to $32,500 per day of violation . . . [or] (2) administrative penalties of up to $11,000 per day for each violation."

The Sacketts sought a hearing with the EPA to challenge the finding that the Parcel is subject to the CWA. The EPA did not grant the Sacketts a hearing and continued to assert CWA jurisdiction over the Parcel. The Sacketts then filed this action in the United States District Court for the District of Idaho seeking injunctive and declaratory relief. They chal-

---

[1] The compliance order charged the Sacketts with discharging pollutants into the waters of the United States, absent a permit, in violation of 33 U.S.C. § 1311(a).

Case 2:08-cv-00185-EJL Document 40 Filed 09/17/10 Page 4 of 14
Case: 08-35854 09/17/2010 Page: 4 of 14 ID: 7477500 DktEntry: 46-1

14340                SACKETT v. USEPA

lenged the compliance order as (1) arbitrary and capricious under the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(2)(A); (2) issued without a hearing in violation of the Sacketts' procedural due process rights; and (3) issued on the basis of an "any information available" standard that is unconstitutionally vague.

The district court granted the EPA's Federal Rule of Civil Procedure 12(b)(1) motion to dismiss the Sacketts' claims for lack of subject-matter jurisdiction. It concluded that the CWA precludes judicial review of compliance orders before the EPA has started an enforcement action in federal court. The Sacketts filed a Federal Rule of Civil Procedure 59(e) motion for clarification and reconsideration that was also denied. The Sacketts appealed. We have jurisdiction pursuant to 28 U.S.C. § 1291.

## II

We review de novo the dismissal of a complaint for lack of subject-matter jurisdiction. *Mangano v. United States*, 529 F.3d 1243, 1245 n.2 (9th Cir. 2008).

The EPA has determined that the Sacketts discharged pollutants into the waters of the United States in violation of the CWA. When the EPA identifies a CWA violation, it has three main civil enforcement options.[2] First, it can assess an administrative penalty. 33 U.S.C. § 1319(g). When the EPA assesses an administrative penalty, the alleged violator is entitled to "a reasonable opportunity to be heard and to present evidence," the public is entitled to comment, and any assessed penalty is subject to immediate judicial review. 33 U.S.C. § 1319(g)(4), (8). Second, the EPA can initiate a civil enforcement action in federal district court. 33 U.S.C. § 1319(b). Third, the EPA can issue, as it did here, an administrative "compliance order." 33 U.S.C. § 1319(a).

---

[2]Criminal penalties are also available. 33 U.S.C. § 1319(c).

Case 2:08-cv-00185-EJL Document 40 Filed 09/17/10 Page 5 of 14
Case: 08-35854 09/17/2010 Page: 5 of 14 ID: 7477500 DktEntry: 46-1

Sackett v. USEPA                     14341

A compliance order "is a document served on the violator, setting forth the nature of the violation and specifying a time for compliance with the Act." *S. Pines Assocs. by Goldmeier v. United States*, 912 F.2d 713, 715 (4th Cir. 1990). The EPA derives its power to issue compliance orders from 33 U.S.C. § 1319(a)(3), which states:

> Whenever on the basis of any information available to him the Administrator finds that any person is in violation of section 1311, 1312, 1316, 1317, 1318, 1328, or 1345 of this title, . . . he shall issue an order requiring such person to comply with such section or requirement, or he shall bring a civil action in accordance with [33 U.S.C. § 1319(b)].

[1] To enforce a compliance order, the EPA must bring an enforcement action in federal court under 33 U.S.C. § 1319(b). The compliance order issued against the Sacketts exposed them to potential court-imposed civil penalties not to exceed $32,500 "per day for each violation" of the compliance order.[3] 33 U.S.C. § 1319(d); 40 C.F.R. § 19.4. In assessing the amount of the penalty, courts "shall consider the seriousness of the violation or violations, the economic benefit (if any) resulting from the violation, any history of such violations, any good-faith efforts to comply with the applicable requirements, the economic impact of the penalty on the violator, and such other matters as justice may require." 33 U.S.C. § 1319(d).

The Sacketts argue that compliance orders are judicially reviewable prior to the EPA filing an enforcement action in federal court. The CWA, however, does not expressly provide for pre-enforcement judicial review of compliance orders. *See* 33 U.S.C. § 1319. The Sacketts argue that federal courts are nonetheless authorized to conduct pre-enforcement review of

---

[3]The maximum per-day penalty amount increased to $37,500 effective January 12, 2009. 40 C.F.R. § 19.4.

compliance orders pursuant to the APA. Under the APA, "[a]gency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review." 5 U.S.C. § 704. Agency action is not reviewable under the APA, however, where the relevant statute "preclude[s] judicial review." 5 U.S.C. § 701(a)(1).

**[2]** Whether the CWA precludes pre-enforcement review of compliance orders is an issue of first impression in our circuit. We begin with the presumption favoring judicial review of administrative action. *See Abbott Labs. v. Gardner*, 387 U.S. 136, 140 (1967), *overruled on other grounds by Califano v. Sanders*, 430 U.S. 99 (1977). That presumption is overcome, however, "whenever the congressional intent to preclude judicial review is fairly discernible in the statutory scheme." *Block v. Cmty. Nutrition Inst.*, 467 U.S. 340, 351 (1984) (quotation marks omitted). "Whether and to what extent a particular statute precludes judicial review is determined not only from its express language, but also from the structure of the statutory scheme, its objectives, its legislative history, and the nature of the administrative action involved." *Id.* at 345. The CWA does not expressly preclude pre-enforcement judicial review of such compliance orders. So we must consider the other factors identified by the Supreme Court to determine whether the CWA impliedly precludes pre-enforcement judicial review.

**[3]** In this assessment, we do not work from a blank slate. Every circuit that has confronted this issue has held that the CWA impliedly precludes judicial review of compliance orders until the EPA brings an enforcement action in federal district court. *See, e.g.*, *Laguna Gatuna, Inc. v. Browner*, 58 F.3d 564 (10th Cir. 1995); *S. Ohio Coal Co. v. Office of Surface Mining, Reclamation & Enforcement*, 20 F.3d 1418 (6th Cir. 1994); *S. Pines Assocs. by Goldmeier v. United States*, 912 F.2d 713 (4th Cir. 1990); *Hoffman Group, Inc. v. EPA*, 902 F.2d 567 (7th Cir. 1990). Many district courts have also so held. *See, e.g.*, *Sharp Land Co. v. United States*, 956 F.

Supp. 691, 693-94 (M.D. La. 1996); *Child v. United States*, 851 F. Supp. 1527, 1533 (D. Utah 1994); *Bd. of Managers, Bottineau Cnty. Water Res. Dist. v. Bornhoft*, 812 F. Supp. 1012, 1014-1015 (D.N.D. 1993); *McGown v. United States*, 747 F. Supp. 539, 542 (E.D. Mo. 1990); *Fiscella & Fiscella v. United States*, 717 F. Supp. 1143, 1146-47 (E.D. Va. 1989). The reasoning of these courts is persuasive to us, as well as the broad uniformity of consensus on this issue.

**[4]** First, we look to the structure of the statutory scheme and the nature of the administrative action involved. Here, Congress gave the EPA a choice of "issu[ing] an order requiring such person to comply with such section or requirement, *or* . . . bring[ing] a civil action [in district court]." 33 U.S.C. § 1319(a)(3) (emphasis added). Authorizing pre-enforcement judicial review of compliance orders would eliminate this choice by enabling those subject to a compliance order to force the EPA to litigate all compliance orders in court. *E.g.*, *Hoffman Group*, 902 F.2d at 569. Such a result would be discordant with the statutory scheme.

**[5]** Moreover, no sanctions can be imposed, or injunctions issued, for noncompliance with a compliance order until the EPA brings a civil enforcement action in district court. *See* 33 U.S.C. § 1319(d); *Hoffman Group*, 902 F.2d at 569. Given that an enforcement action gives an opportunity for judicial consideration of the compliance order, we infer that Congress intended that all challenges to the compliance order be brought in one proceeding. *See id.*; *cf. Middlesex County Sewerage Auth. v. Nat'l Sea Clammers Ass'n*, 453 U.S. 1, 14 (1981) ("In the absence of strong indicia of a contrary congressional intent, we are compelled to conclude that Congress provided precisely the remedies it considered appropriate.").

**[6]** In addition, by contrast to how it treated compliance orders, Congress set forth an explicit mechanism for judicial review of administrative penalties assessed by the EPA for CWA violations. *See* 33 U.S.C. § 1319(g)(8). Congress's

express grant of judicial review for administrative penalties helps to persuade us that the absence of a similar grant of judicial review for compliance orders was an intentional omission that must be respected. *See S. Ohio Coal Co.*, 20 F.3d at 1426.

[7] Second, we look to the objectives of the statutory scheme. Here, courts have concluded that compliance orders, like pre-enforcement administrative orders in other environmental statutes, are meant to "allow EPA to act to address environmental problems quickly and without becoming immediately entangled in litigation." *S. Pines Assocs.*, 912 F.2d at 716; *see also* S. Rep. No. 92-414, at 3730 (1972) ("One purpose of these new requirements is to avoid the necessity of lengthy fact finding, investigations, and negotiations at the time of enforcement. Enforcement of violations of requirements under this Act should be based on relatively narrow fact situations requiring a minimum of discretionary decision making or delay."). This goal of enabling swift corrective action would be defeated by permitting immediate judicial review of compliance orders.

[8] Third, we consider the legislative history of the CWA. The enforcement provisions of the CWA were modeled on enforcement provisions in the Clean Air Act ("CAA"), and many courts have relied on similar provisions in the CAA in concluding that the CWA precludes pre-enforcement judicial review of compliance orders. *Laguna Gatuna*, 58 F.3d at 565; *S. Pines Assocs.*, 912 F.2d at 716; *see also* S. Rep. No. 92-414, at 3730. During the enactment of the CAA, the Conference Committee which reconciled the House and Senate versions of the CAA deleted a provision in the Senate's version of the bill that would have expressly provided for pre-enforcement review of CAA administrative compliance orders. *See Lloyd A. Fry Roofing Co. v. EPA*, 554 F.2d 885, 890 (8th Cir. 1977). At least one court has inferred from this deletion that it was intended to preclude pre-enforcement judicial review of compliance orders. *See id.* (citing *Gulf Oil*

*Corp. v. Copp Paving Co.*, 419 U.S. 186, 200 (1974)). Such an inference is not unassailable. *See* Andrew I. Davis, *Judicial Review of Environmental Compliance Orders*, 24 Envt'l L. 189, 199 (1994). Nevertheless, and subject to the general caution with which we must view all legislative history not adopted by both houses and enacted as law, that inference is supported by the structure of the CWA and its statutory language discussed above.

**[9]** In view of the above considerations, we hold that a congressional intent to preclude pre-enforcement judicial review of compliance orders is "fairly discernible in the statutory scheme." *Block*, 467 U.S. at 351.

## III

**[10]** The Sacketts argue that CWA compliance orders must be judicially reviewable before enforcement because preclusion of pre-enforcement review violates their due process rights. They rely on the Eleventh Circuit's opinion in *Tennessee Valley Authority v. Whitman*, 336 F.3d 1236 (11th Cir. 2003) [hereinafter *TVA*], in which that court identified constitutional problems with a similar compliance-order provision in the CAA, *see id.* at 1260. The Eleventh Circuit concluded that the complete preclusion of judicial review of compliance orders issued under the CAA would raise serious constitutional questions where compliance orders, "if ignored, lead[ ] automatically to the imposition of severe civil penalties and perhaps imprisonment." *Id.* at 1256. The chief problem with the CAA, as the Eleventh Circuit saw it, was that a compliance order could be issued by the EPA "on the basis of any information available" without any hearing, and that the CAA made civil and criminal penalties dependent on violations of compliance orders whether or not there was an actual violation of the CAA. *See id.* (citing Davis, *supra* at 194 ("Regardless of the merits of the alleged violation underlying the compliance order, disregarding the order potentially subjects the recipient to accruing daily penalties.")).

**[11]** If the CWA is read in the literal manner the Sacketts suggest, it could indeed create a due process problem. Like the CAA, the CWA permits the EPA to issue compliance orders "on the basis of any information available," 33 U.S.C. § 1319(a)(3), which presumably includes "a staff report, newspaper clipping, anonymous phone tip, or anything else that would constitute 'any information,' " TVA, 336 F.3d at 1241 (observing that "[t]he standard is less rigorous than the probable cause standard"). And according to the plain text of the enforcement provision, "any person who violates any order issued by the Administrator under [33 U.S.C. § 1319(a)], shall be subject to a civil penalty . . . for each violation." 33 U.S.C. § 1319(d). Thus, the Sacketts' reading of the CWA suggests that they risk substantial financial penalties for violating the compliance order, even if they did not violate the CWA, if the EPA establishes in an enforcement proceeding that the compliance order was validly issued based on "any information available." *See TVA*, 336 F.3d at 1259 (concluding that "[t]he district courts serve as forums for the EPA to conduct show-cause hearings").

**[12]** We decline to interpret the CWA in this manner. The civil penalty provision of the CWA is "not a model of clarity." *Atl. States Legal Found., Inc. v. Tyson Foods, Inc.*, 897 F.2d 1128, 1137 (11th Cir. 1990). Although the term "any order" in 33 U.S.C. § 1319(d) could be interpreted to refer to *all* compliance orders issued on the basis of "any information available," the term could also be interpreted to refer only to those compliance orders that are predicated on *actual*, not alleged, violations of the CWA, as found by a district court in an enforcement action according to traditional civil evidence rules and burdens of proof.

**[13]** Mindful of the Supreme Court's repeated instruction that "every reasonable construction must be resorted to, in order to save a statute from unconstitutionality," *Edward J. DeBartolo Corp. v. Fla. Gulf Coast Bldg. & Const. Trades Council*, 485 U.S. 568, 575 (1988) (quoting *Hooper v. Cali-*

*fornia*, 155 U.S. 648, 657 (1895)), we believe that the latter interpretation is the better interpretation of "any order" in § 1319(d). The EPA is authorized only "to commence a civil action for appropriate relief, including a permanent or temporary injunction, *for any violation for which [the EPA] is authorized to issue a compliance order.*" 33 U.S.C. § 1319(b) (emphasis added). Read carefully, this provision does not authorize the EPA to bring enforcement actions for mere violations of compliance orders. Rather, to enforce a compliance order, the EPA must bring an action alleging a violation of the CWA itself. Given that the CWA does not empower the EPA to bring an enforcement action on the basis of a violation of a compliance order alone, it follows that a court cannot assess penalties for violations of a compliance order under § 1319(d) unless the EPA also proves, by a preponderance of the evidence, that the defendants actually violated the CWA in the manner alleged.[4] Under this interpretation, if the EPA does not prove that the CWA was actually violated, the compliance order is unenforceable, even if it was validly issued on the basis of "any information available." We therefore hold that the term "any order" in § 1319(d) refers only to orders predicated on actual violations of the CWA as identified by a district court in an enforcement proceeding according to traditional rules of evidence and standards of proof.

The Sacketts further allege that forcing them to wait until the EPA brings an enforcement action "ignores the realities of [their] circumstances," because of the "frightening penalties" they risk accruing by refusing to comply. The increase in penalties from noncompliance with an administrative order not subject to immediate judicial review, however, does not nec-

---

[4]This interpretation of the term "any order" is in accord with other circuits' readings of the CWA. *See, e.g.*, *Hoffman Group*, 902 F.2d at 569 ("Hoffman cannot be compelled to comply with the Compliance Order without an opportunity to challenge the Order's validity in court."); *S. Pines Assocs.*, 912 F.2d at 717 ("Southern Pines and Vico can contest the existence of EPA's jurisdiction if and when EPA seeks to enforce the penalties provided by the Act.").

essarily constitute a due process violation. *See Thunder Basin Coal Co. v. Reich*, 510 U.S. 200, 218 (1994) ("Although the [Mine] Act's civil penalties unquestionably may become onerous if petitioner chooses not to comply, the Secretary's penalty assessments become final and payable only after full review by both the Commission and the appropriate court of appeals."). Rather, statutory preclusion of pre-enforcement judicial review of administrative orders violates due process only when the "practical effect of coercive penalties for non-compliance [is] to foreclose all access to the courts" so that "compliance is sufficiently onerous and coercive penalties sufficiently potent that a constitutionally intolerable choice might be presented." *Id.*

**[14]** We are not persuaded that the potential consequences from violating CWA compliance orders are so onerous so as to "foreclose all access to the courts" and create a "constitutionally intolerable choice." We reach this conclusion for two reasons. First, the CWA has a permitting provision. *See* 33 U.S.C. § 1344(a). The Sacketts could seek a permit to fill their property and build a house, the denial of which would be immediately appealable to a district court under the APA. *See* 33 C.F.R § 331.10; 5 U.S.C. § 704. If the Sacketts were denied a permit and then took an appeal, they could challenge whether their property is subject to the jurisdiction of the CWA. *See id.*; *Baccarat Fremont Devs., LLC v. U.S. Army Corps of Eng'rs*, 425 F.3d 1150, 1154 (9th Cir. 2005) (concluding that the Army Corps had jurisdiction over the plaintiff's property under the CWA). Therefore, rather than completely foreclosing the Sacketts' ability to use their property or challenge CWA jurisdiction, the CWA channels judicial review through the affirmative permitting process. *See Shalala v. Ill. Council on Long Term Care, Inc.*, 529 U.S. 1, 19 (2000) (noting the distinction "this Court has often drawn between a total preclusion of review and postponement of review" and highlighting similar "channeling requirement[s]"); *United States v. Dunifer*, 219 F.3d 1004, 1008 (9th Cir. 2000) ("[I]t is important to note that this is not a case in

Case: 08-35854 09/17/2010 Page: 13 of 14 ID: 7477900 DktEntry: 46-1
Case 2:08-cv-00185-EJL Document 40 Filed 09/17/10 Page 13 of 14

SACKETT v. USEPA 14349

which Dunifer had no means to obtain judicial review of the regulations. Dunifer could have applied for a license and sought a waiver of the applicable FCC rules . . . ." (citing *Thunder Basin*, 510 U.S. at 212-13)).

**[15]** Second, the civil penalties provision is committed to judicial, not agency, discretion. *See* 33 U.S.C. § 1319(d). The amount of the penalty for noncompliance with a CWA compliance order is to be determined by a court and is determined on the basis of six factors: (1) the seriousness of the violation, (2) the economic benefit resulting from the violation, (3) any history of CWA violations, (4) good-faith efforts to comply, (5) the economic impact of the penalty on the violator, and (6) such other matters as justice may require. *Id.* Any penalty ultimately assessed against the Sacketts would therefore reflect a discretionary, judicially determined penalty, taking into account a wide range of case-specific equitable factors, and imposed only after the Sacketts have had a full and fair opportunity to present their case in a judicial forum.

**[16]** We therefore hold that precluding pre-enforcement judicial review of CWA compliance orders does not violate due process.

**IV**

In conclusion, we hold that it is "fairly discernable" from the language and structure of the Clean Water Act that Congress intended to preclude pre-enforcement judicial review of administrative compliance orders issued by the EPA pursuant to 33 U.S.C. § 1319(a)(3). We further interpret the CWA to require that penalties for noncompliance with a compliance order be assessed only after the EPA proves, in district court, and according to traditional rules of evidence and burdens of proof, that the defendants violated the CWA in the manner alleged in the compliance order. Thus we do not see any sharp disconnect between the process given a citizen and the likely penalty that can be imposed under the CWA. Under these cir-

14350          SACKETT v. USEPA

cumstances, preclusion of pre-enforcement judicial review does not violate the Sacketts' due process rights. The district court properly dismissed this case for lack of subject-matter jurisdiction.[5]

**AFFIRMED.**

---

[5] Given this conclusion, we need not and do not reach the claims of due process violations based on the failure to provide notice and a hearing before an impartial tribunal or the contention that the CWA compliance order provision is impermissibly vague.