BRADLEY R. CAHOON
bcahoon@swlaw.com
Idaho Bar No. 8558
Snell & Wilmer L.L.P.
Gateway Tower West
15 West South Temple, No. 1200
Salt Lake City, Utah 84101
Telephone:  (801) 257-1900
Facsimile:  (801) 257-1800

M. REED HOPPER (*pro hac vice*)
mrh@pacificlegal.org
Cal. Bar No. 131291
ANTHONY L. FRANÇOIS (*pro hac vice*)
alf@pacificlegal.org
Cal. Bar No. 184100
Pacific Legal Foundation
930 G Street
Sacramento, California 95814
Telephone:  (916) 419-7111
Facsimile:  (916) 419-7747

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF IDAHO, NORTHERN DIVISION

| | |
|---|---|
| CHANTELL and MICHAEL SACKETT, | ) Case No. 2:08-cv-00185-N-EJL |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) **SUPPLEMENTAL** |
| | ) **COMPLAINT FOR** |
| | ) **DECLARATORY AND** |
| UNITED STATES ENVIRONMENTAL | ) **INJUNCTIVE RELIEF** |
| PROTECTION AGENCY; et al., | ) |
| | ) |
| Defendants. | ) |
| | ) |

Pursuant to Federal Rule of Civil Procedure 15(d), Plaintiffs Michael and Chantell Sackett file this Supplemental Complaint for Declaratory and Injunctive Relief, which alleges the occurrence of facts occurring after the original complaint was filed and pleads a claim for relief under the Administrative Procedure Act, 5 U.S.C. §§ 701-706, against Defendants United States Environmental Protection Agency and EPA Administrator Gina McCarthy.[1]  The Sacketts allege as follows:

## INTRODUCTION

1.      Plaintiffs Chantell and Michael Sackett bring this action for injunctive and declaratory relief under the Clean Water Act (CWA), 33 U.S.C. § 1251, *et seq.*, and the Administrative Procedure Act (APA), 5 U.S.C. § 701, *et seq.*

2.      Defendants United States Environmental Protection Agency, *et al.*, have issued a compliance order (as amended) under the CWA to the Sacketts, determining that their property is subject to the CWA, and that they have illegally placed fill material on their property.  The compliance order requires the Sacketts immediately to restore the property to its alleged pre-disturbance wetlands condition.  The compliance order subjects the Sacketts to significant civil penalties for failure to comply.

3.      The Sacketts seek a declaration that EPA's compliance order is null and void because it was issued without jurisdiction.  Further, the Sacketts seek to enjoin EPA from enforcing the compliance order.

## JURISDICTION AND VENUE

4.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 (federal question jurisdiction); § 2201 (authorizing declaratory relief); § 2202 (authorizing

---

[1]  Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Administrator McCarthy is substituted for former Administrator Johnson.

injunctive relief); and 5 U.S.C. § 702 (providing for judicial review of agency action under the APA).

5.      Venue is proper under 28 U.S.C. § 1391(e)(1)(B), because the property that is the subject of the action is situated in this district.

## PARTIES

6.      Plaintiffs CHANTELL AND MICHAEL SACKETT (Sacketts) own the property that is the subject of this action.  The Sacketts purchased the property with the intention to build a house on it.  They applied for and obtained the requisite building permits.  Nothing in the title documents or title policy indicated any limitation on development.

7.      Defendant UNITED STATES ENVIRONMENTAL PROTECTION AGENCY (EPA) is an agency of the United States established pursuant to Reorganization Plan No. 3 of 1970, 84 Stat. 2086.  It is the agency with primary responsibility for the enforcement of the CWA.

8.      Defendant GINA MCCARTHY is the Administrator of EPA, and oversees EPA's enforcement of the CWA.  She is sued in her official capacity only.

## LEGAL BACKGROUND

9.      In 1972, Congress enacted the modern-day CWA to regulate the navigable waters of the United States.

10.     Section 404 of the CWA, 33 U.S.C. § 1344, authorizes the issuance of permits for the discharge of dredge and fill material into the navigable waters of the United States.

11.     Section 301(a), *id.* § 1311(a), prohibits the unpermitted discharge of dredge and fill material into the navigable waters of the United States.

12.     Section 309(a), *id.* § 1319(a), authorizes EPA to issue compliance orders for violations of the CWA, including unpermitted discharges of dredge and fill material into the navigable waters of the United States.

13.     Section 502(7), *id.* § 1362(7), defines "navigable waters" to mean the "waters of the United States, including the territorial seas."

- 2 -

14.    EPA has promulgated regulations to define "waters of the United States."  *See* 40 C.F.R. § 230.3(s).

15.    Under those regulations, navigable waters, interstate waters, intrastate waters with uses that could affect interstate or foreign commerce, impoundments of waters, tributaries of waters, territorial seas, and wetlands adjacent to other waters that are not themselves wetlands, are considered "waters of the United States."  *See id.* § 230.3(s)(1)-(7).

16.    In 2006, the Supreme Court held in a split decision that the CWA does not provide the EPA with jurisdiction over certain wetlands that are connected to non-navigable tributaries of traditional navigable waters.  *See Rapanos v. United States*, 547 U.S. 715 (2006).  The judgment of the Court was announced by Justice Scalia, who authored a plurality opinion joined by three other justices.  Justice Kennedy wrote separately concurring only in the judgment.

17.    The *Rapanos* plurality opinion set forth two jurisdictional tests:  one for tributaries of navigable waters, and one for wetlands adjacent thereto.  With respect to tributaries, the *Rapanos* plurality concluded that "only those relatively permanent, standing or continuously flowing bodies of water 'forming geographic features' that are described in ordinary parlance as 'streams[,] . . . oceans, rivers, [and] lakes'" are subject to the Act.  *Rapanos*, 547 U.S. at 739 (plurality opinion) (quoting Webster's New International Dictionary 2882 (2d ed.)).  Consequently, the Act does not cover "channels through which water flows intermittently or ephemerally, or channels that periodically provide drainage for rainfall."  *Rapanos*, 547 U.S. at 739 (plurality opinion).

18.    With respect to wetlands, the *Rapanos* plurality set forth a two-part test to determine jurisdiction. First, the wetland must have a "continuous surface connection" to another jurisdictional water.  *Id.* at 742.  Second, the connection must be such as to "mak[e] it difficult to determine where the 'water' ends and the 'wetland' begins."  *Id.*  Hence, a wetland is not jurisdictional if its hydrological connection to an adjacent waterbody is subsurface at any point, or if the boundary between the wetland and the adjacent waterbody is not difficult to discern.  *See also id.* at 755

- 3 -

(jurisdictional wetlands must have a "physical connection, which makes them as a practical matter *indistinguishable* from waters of the United States").

19.     In contrast to the plurality, Justice Kennedy's concurrence approaches the jurisdictional question under the rubric of "significant nexus." A tributary is jurisdictional if, based on the tributary's volume of flow, proximity to navigable waters, or other relevant considerations, its adjacent wetlands will "perform important functions for an aquatic system incorporating navigable waters." *Id.* at 780-81. Similarly, a wetland is jurisdictional if it, either by itself or in combination with similarly situated wetlands in the same region, significantly affects the physical, biological, and chemical integrity of a downstream navigable water. *See id.* at 780 (Kennedy, J., concurring in the judgment). As a corollary of the significant nexus test, if the wetland has only an insignificant effect on the downstream traditional navigable waterway, there is no jurisdiction. *See id.*

20.     The Ninth Circuit has clarified that jurisdiction may be proved using either the plurality or the significant nexus test. *N. Cal. River Watch v. Wilcox*, 633 F.3d 766, 781 (9th Cir. 2010).

21.     The EPA's method for identifying wetlands is governed by the 1987 Federal Manual for Identifying and Delineating Jurisdictional Wetlands (1987 Manual). The Manual interprets the EPA's regulations defining "waters of the United States," 40 C.F.R. § 230.3(s).

## FACTUAL ALLEGATIONS

22.     The Sacketts own a 0.63-acre dirt lot parcel located at 1604 Kalispell Bay Road, in Bonner County, Idaho. The property is at present undeveloped. The property is bounded to the north by Kalispell Bay Road, to the east by a developed lot, to the west by an undeveloped lot, and to the south by Old Schneider Road.

23.     The property lies to the north of Priest Lake. A ditch runs along the north side of Kalispell Bay Road. Water in that ditch flows westward until discharging in Kalispell Creek, which is approximately 500 feet west of the property. Drainage from the Sacketts' property does not enter

- 4 -

the ditch.  There is no ditch on the south side of Kalispell Road.  Between the property and Priest Lake are several developed lots with numerous permanent structures.

24.     There is no surface water connection between the property and Kalispell Creek. Further, there is no surface water connection between the property and Priest Lake.

25.     The property does not, either by itself or in combination with similar properties in the area, substantially affect the physical, chemical, and biological integrity of Kalispell Creek, Priest Lake, or any other water body.

26.     On November 26, 2007, EPA issued a compliance order to the Sacketts, determining that the property is subject to the CWA, and that the Sacketts had illegally placed one half-acre of fill material on the property.  *See* Compl. Attach. A.  The order determined that the property is a wetland under the 1987 Manual, and that the property is adjacent to Priest Lake.  The order mandated that the fill material be removed by April 15, 2008, and that the property be replanted by April 30, 2008.  Further, the order required that the site be fenced off for three growing seasons. Lastly, the order stated that failure to comply with the order may subject the Sacketts to administrative and civil penalties of up to $32,500 per day.

27.     On April 1, 2008, the Sacketts through counsel responded to the compliance order. *See* Compl. Attach. B.  In that response, the Sacketts stated that the property is not a wetland under the 1987 Manual, and that the property is not subject to CWA jurisdiction under *Rapanos*.  Further, the Sacketts' response demanded that EPA provide the Sacketts an opportunity to be heard and to contest EPA's determinations, or else treat the compliance order as unenforceable and without legal effect.

28.     On April 4, 2008, EPA, through a letter to the Sacketts, extended the compliance order's deadlines, requiring that dredge and fill material removal begin by May 1, 2008, with replanting to be completed by May 30, 2008.  *See* Compl. Attach. C.

- 5 -

29.     On April 11, 2008, EPA, through letter to the Sacketts' counsel, acknowledged receipt of the Sacketts' April 1 letter of contest and reaffirmed, without further explanation, the agency's position that the property is subject to the CWA.  *See* Compl. Attach. D.

30.     On April 28, 2008, the Sacketts filed a complaint for declaratory and injunctive relief to challenge the compliance order.  *See* Compl.

31.     On May 1, 2008, EPA further amended the compliance order by extending the deadline for fill removal and replacement of wetland soil to June 2, 2008, and for replanting of the site to July 1, 2008.  EPA also amended the order's deadlines for subsequent monitoring of the site over a three-year period.

32.     Sometime prior to May 12, 2008, Michael Szerlog, then Manager of EPA's Aquatic Resources Unit, instructed John Olson, an EPA ecologist, to visit the Sacketts' property to conduct additional research regarding EPA's jurisdiction over the site.

33.     On May 15, 2008, Mr. Olson flew from Boise, Idaho, to Spokane, Washington, and that afternoon visited the Sacketts' and neighboring properties.  Mr. Olson was accompanied by Michael Doherty, a Corps official.  While at the site, Mr. Olson filled out a Corps jurisdictional determination form and took field notes about his observations of the Sacketts' property as well as its purported connection to nearby water bodies as well as Priest Lake.  At the conclusion of this site visit, Mr. Olson telephoned Mr. Ankur Tohan, then an attorney in EPA's Regional Counsel office in Seattle.

34.     Also sometime on May 15, following Mr. Olson's telephone call, Mr. Szerlog discussed the Sackett matter with Richard Parkin, then Acting Director of EPA's Office of Ecosystems, Tribal, and Public Affairs, at Director Parkin's Seattle office. Director Parkin then signed an amended compliance order, dated May 15, 2008.

35.     The amended compliance order withdraws the Scope of Work Restoration Work Plan attached to the November 2007 compliance order and deletes the other 2008 due dates for restoration, except that the due date for removal of fill material and replacement of wetlands soils

was extended to October 31, 2008.  In all other substantive respects, the order as amended May 15, 2008, remains the same as the November 2007 order.

36.     On June 23, 2008, Mr. Olson downloaded data from the United States Geological Service's "StreamStats" website.  These data pertain to water bodies in the vicinity of the Sacketts' property.

37.     On July 1, 2008, Mr. Olson composed a memorandum to EPA's file regarding his May 15, 2008, inspection of the Sacketts' property.

## ALLEGATIONS PERTAINING TO INJUNCTIVE RELIEF

38.     The Sacketts hereby reallege and incorporate by reference the allegations contained in Paragraphs 1 through 37 as though fully set forth herein.

39.     If a permanent injunction does not issue enjoining EPA from enforcing the compliance order as amended against the Sacketts, the Sacketts will be irreparably harmed.  The Sacketts are currently and continuously injured by the issuance of the compliance order as amended because its issuance and the coincident threat of enforcement has forced and will continue to force the Sacketts to alter their land management practices and subject them to severe restrictions on the use of their land.  Specifically, as a result of compliance order and its threat of enforcement, the Sacketts have suffered and will continue to suffer a diminution in the available uses of that land. The Sacketts' property has already lost value because of the compliance order and its threat of enforcement, which loss will continue.

40.     The Sacketts have no plain, speedy, and adequate remedy at law.

41.     If not enjoined by this Court, EPA will continue to enforce, and threaten to enforce, the compliance order in derogation of the Sacketts' rights.

42.     Accordingly, injunctive relief is appropriate.

- 7 -

**ALLEGATIONS PERTAINING TO DECLARATORY RELIEF**

43.     The Sacketts hereby reallege and incorporate by reference the allegations contained in Paragraphs 1 through 42 as though fully set forth herein.

44.     An actual and substantial controversy exists between the Sacketts and EPA over the latter's failure to comply with the CWA and the APA in determining that the Sacketts' property is subject to the CWA.

45.     This case is currently justiciable because EPA's failure to comply with these laws is the direct result of final agency action that has caused and will continue to cause immediate and concrete injury to the Sacketts.  The Sacketts are currently and continuously injured by the issuance of the compliance order as amended because its issuance and coincident threat of enforcement has forced and will continue to force the Sacketts to alter their land management practices and subject them to severe restrictions on the use of their land.  Specifically, as a result of the compliance order and its threat of enforcement, the Sacketts have suffered and will continue to suffer a diminution in the available uses of that land.  The Sacketts' property has already lost value because of the compliance order and its threat of enforcement, which loss will continue.

46.     Declaratory relief is, therefore, appropriate to resolve this controversy.

**CLAIM FOR RELIEF**
**(Violation of Administrative Procedure Act, 5 U.S.C. § 706(2))**

47.     The Sacketts hereby reallege and incorporate by reference the allegations contained in Paragraphs 1 through 46 as though fully set forth herein.

48.     The Sacketts' property is not subject to the CWA because the Sacketts' property contains no "water of the United States." The Sacketts' property does not substantially affect, either by itself or in combination with similarly situated properties in the area, the physical, chemical, and biological integrity of any traditional navigable water, and it is not connected to any other body of water such that one cannot discern where that body of water ends and the property begins.

- 8 -

49.     EPA's compliance order as amended—which determines that the Sacketts' property is subject to the CWA—is therefore arbitrary and capricious, and contrary to law.  *See* 5 U.S.C. § 706(2).

50.     EPA's compliance order as amended is a final agency action subject to judicial review.  *See* 5 U.S.C. §§ 702, 704.

## PRAYER FOR RELIEF

Wherefore, the Sacketts pray for judgment as follows:

1.     A declaration that the Sacketts' property is not subject to the CWA and that the November 24, 2007 compliance order, as amended on April 4, 2008, May 1, 2008, and May 15, 2008, is null and void.

2.     A declaration that the November 24, 2007 compliance order, as amended on April 4, 2008, May 1, 2008, and May 15, 2008, is arbitrary, capricious, and contrary to law under the Administrative Procedure Act.

3.     An injunction enjoining EPA from enforcing the November 24, 2007 compliance order, as amended on April 4, 2008, May 1, 2008, and May 15, 2008.

4.     For an award of attorneys' fees, expenses, and costs; and,

5.      For such other relief as the Court deems just and proper.

DATED: April 24, 2015.

Respectfully submitted,

M. REED HOPPER
ANTHONY L. FRANÇOIS
Pacific Legal Foundation

BRADLEY R. CAHOON
Snell & Wilmer L.L.P.


By ___/s/ Anthony L. François_____
    ANTHONY L. FRANÇOIS
    Cal. Bar No. 184100
    *Pro Hac Vice*
    Telephone:  (916) 419-7111

Attorneys for Plaintiffs

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on the 24th day of April, 2015, I filed the foregoing electronically through the CM/ECF system, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

Bradley R. Cahoon, Attorney for Plaintiffs
bcahoon@swlaw.com

Nicholas J. Woychick, Attorney for Defendants
Nick.Woychick@usdoj.gov

Cynthia J. Morris
c.j.morris@usdoj.gov

Mark A. Ryan
ryan.mark@epa.gov


　　/s/ Anthony L. François　
ANTHONY L. FRANÇOIS
Attorney for Plaintiffs